JAMES E. UPCHURCH v. HUDSON FUNERAL HOME, INC., A CORPORATION, AND RONALD C. JOHNSON.

(Filed 29 January, 1965.)

**1. Municipal Corporations § 4—**

A municipality is a creature of the legislature and has only such authority as is conferred upon it, expressly or by necessary implication.

**2. Municipal Corporations § 24—**

A municipal ordinance in conflict with a statute is void.

**3. Municipal Corporations § 28; Automobiles § 6—**

Municipal corporations are authorized by G.S. 20-169 to adopt ordinances requiring ambulances to observe traffic control lights.

**4. Same—**

A municipal ordinance requiring ambulances to observe traffic control lights is not in conflict with G.S. 20-156(b), since the right of way privileges accorded to ambulances by statute is not absolute and G.S. 20-158(b) grants municipalities power to require ambulances to observe traffic lights by implication at least.

**5. Trial § 10—**

A litigant has the right to trial of the cause before an impartial judge, and expressions from the bench which contain the slightest intimation from the judge as to the weight, importance, or effect of the evidence should be scrupulously avoided.

**6. Same—**

In this case, exchanges between the court and the attorneys in the presence of the jury are not approved, but under the facts of this case in which a part of the colloquy related to the obvious fact that in approaching the intersection each driver was in sight of the other at the same time, and another part contained a statement in regard to the applicable law favorable to appellant, the incident *is held* not prejudicial.

**7. Damages § 12—**

A self-employed plaintiff hiring extra help as needed in his work, and being remitted by his injuries largely to supervision of the work, may testify as to his income from his business before and after the injury, there being no unusual circumstances other than his condition and increased labor costs affecting his income and plaintiff having testified as to the amount of the increase of labor costs.

APPEAL by defendants from *Gambill, J.*, July 1964 Special Civil Session of DURHAM.

Action to recover for personal injuries and property damage resulting from a collision of motor vehicles.

The collision occurred about 5:20 P.M., 13 December 1959, at the intersection of Main and Duke Streets in the city of Durham. The in-

tersection is in a business district; traffic is controlled by an automatic light which alternately shows green, yellow and red, located slightly to the west of the center of the intersection. There is a business structure at each corner of the intersection. Plaintiff was driving his Chevrolet automobile southwardly on Duke Street; his speed as he approached and entered the intersection was about 15 miles per hour. Defendant Johnson was operating an ambulance owned by his employer, the corporate defendant; he was conveying a patient to Watts Hospital and was proceeding westwardly on Main Street. The ambulance had been travelling at the rate of 50 miles per hour, but had slowed to 20 by the time it entered the intersection. It passed to the left of cars standing at the intersection, and entered on a red light from a left-turn lane. Plaintiff entered on a green light. The vehicles collided about the center of the intersection, the front of the ambulance came in contact with the left rear of the Chevrolet. The evidence was conflicting as to whether the siren on the ambulance was sounding or its red light was flashing immediately before the collision. Plaintiff testified that he did not see or hear the ambulance until an instant before the impact.

Plaintiff alleges that defendants were negligent by reason of excessive speed, violation of City Ordinance 1134 in entering the intersection on a red light, failure to keep a proper lookout, failure to maintain proper control, and entering and attempting to traverse the intersection from a left-turn lane. Defendants deny they were negligent, and aver that plaintiff was contributorily negligent in failing to yield the right of way (G.S. 20-156), failing to keep a proper lookout, and failing to maintain proper control. Corporate defendant counterclaimed for damage to the ambulance.

The court nonsuited corporate defendant's counterclaim. The jury found that plaintiff was damaged by the negligence of defendants, and plaintiff was not contributorily negligent. Damages were awarded, $15,000 for personal injury, $300 for property damage. Judgment was entered on the verdict.

*Everett, Everett & Everett and Smith, Leach, Anderson and Dorsett for plaintiff.*

*Bryant, Lipton, Bryant and Battle for defendants.*

MOORE, J. Defendants assign errors which, they contend, entitle them to a new trial.

— I —

The City of Durham Traffic Code, pertaining to automatic traffic lights, and an amendment thereto, Ordinance No. 1134, were pleaded by plaintiffs and admitted in evidence. It was stipulated by the parties that the code, as amended by said ordinance, had been duly adopted. The pertinent portion of Ordinance No. 1134 provides as follows:

"Whenever traffic is controlled by traffic control signals, placed in accordance with the traffic ordinances of the City of Durham, exhibiting the word 'Go,' 'Caution', or 'Stop', or exhibiting different colored lights successively one at a time, the driver of all ambulances public or private shall obey the instructions of such official traffic control device applicable thereto in accordance with the traffic control signal legend as provided in Section 12 of this Code, unless otherwise directed by a police officer stationed at that intersection."

Defendants contend that this ordinance was enacted without authority, is in direct conflict with G.S. 20-156(b) and is void, and that the court erred to their prejudice in giving effect thereto in the charge, and in nonsuiting corporate defendant's counterclaim by reason thereof. Corporate defendant concedes that if the ordinance is valid the nonsuit of its counterclaim was proper.

G.S. 20-156(b) provides as follows:

"The driver of a vehicle upon a highway shall yield the right-of-way to police and fire department vehicles and public ambulances when the latter are operated upon official business and the drivers thereof sound audible signal by bell, siren or exhaust whistle. This provision shall not operate to relieve the driver of a police or fire department vehicle or public or private ambulance from the duty to drive with due regard for the safety of all persons using the highway, nor shall it protect the driver of any such vehicle from the consequence of any arbitrary exercise of such right-of-way."

In *Davis v. Charlotte*, 242 N.C. 670, 89 S.E. 2d 406, involving a city ordinance with respect to the sale of beer, it is declared: "A municipal corporation is a creature of the General Assembly. *Ward v. Elizabeth City*, 121 N.C. 1, 27 S.E. 993. Municipal Corporations have no inherent powers but can exercise only such powers as are expressly conferred by the General Assembly or such as are necessarily implied by those expressly given. *S. v. Ray*, 131 N.C. 814, 42 S.E. 960; *S. v. McGee*, 237

N.C. 633, 75 S.E. 2d 783." Further: " 'Municipal ordinances are ordained for local purposes in the exercise of a delegated legislative function, and must harmonize with the general laws of the State. In case of conflict the ordinance must yield to the State law.' *S. v. Freshwater,* 183 N.C. 762, 111 S.E. 161, and cases cited therein."

*State v. Stallings,* 189 N.C. 104, 126 S.E. 187, is to the same effect. The Court struck down a local ordinance requiring traffic to stop at street intersections; the State law only required traffic to reduce speed to 10 miles per hour before entering intersections. This case was decided in 1925; G.S. 20-156(b) was enacted in 1937. We will have occasion to refer again to this case in the following discussion.

In the solution of the problem presented, two questions arise (1) Has the General Assembly expressly or by necessary implication authorized municipalities to adopt regulations such as Ordinance No. 1134 above; and (2) has the General Assembly by the enactment of G.S. 20-156(b) made the "right of way" of emergency ambulances absolute, so as to bring such an ordinance into conflict with State law?

Municipalities are empowered to "adopt ordinances for the regulation and use of the streets . . . as it (they) may deem best for the public welfare . . ." and "to provide for the regulation, diversion and limitation of . . . vehicular traffic upon public streets (and) highways . . . of the city (municipalities)." G.S. 160-200(11) and (31). It has been held that these provisions authorize the erection of automatic traffic control lights by municipalities. *Hamilton v. Hamlet,* 238 N.C. 741, 78 S.E. 2d 770; *Hodges v. Charlotte,* 214 N.C. 737, 200 S.E. 889.

At the time of the enactment of G.S. 20-156(b) in 1937 and as a part of the same Act (P.L. 1937, C. 407) the General Assembly enacted G.S. 20-169, providing as follows:

> "Local authorities, except as expressly authorized by § 20-141 and § 20-158, shall have no power or authority to alter any speed limitations declared in this article or to enact or enforce any rules or regulations contrary to the provisions of this article, except that local authorities shall have power to provide by ordinances for the regulation of traffic by means of traffic or semaphores or other signaling devices on any portion of the highway where traffic is heavy or continuous . . ."

Cities and towns are "local authorities." G.S. 20-38(m). Speed regulations (G.S. 20-141) are not involved in the question under consideration. G.S. 20-158 will be considered below. We have held that the above provisions of G.S. 20-169 authorize municipal corporations "to install automatic traffic control signals and compel their observance by ordinance. *Cox v. Freight Lines,* 236 N.C. 72, 72 S.E. 2d 25. G.S. 20-169

was amended by S.L. 1955, C. 384, § 2, so as to expressly approve the installation of automatic traffic control lights by municipalities. The provisions of G.S. 20-169 are sufficiently broad to authorize the adoption of Ordinance No. 1134, requiring ambulances to observe traffic lights, unless it is the intent of the General Assembly that emergency ambulances have absolute right of way at all intersections.

G.S. 20-158 provides as follows:

"(a) The State Highway Commission, with reference to State highways, and local authorities, with reference to highways under their jurisdiction, are hereby authorized to designate main traveled or through highways by erecting at the entrance thereto from intersecting highways signs notifying drivers of vehicles to come to full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto and yield the right-of-way to vehicles operating on the designated main traveled or through highway and approaching said intersection. . . .

(b) This section shall not interfere with the regulations prescribed by towns and cities.

(c) When a stop light has been erected or installed at any intersection in this State outside of the corporate limits of a municipality, no operator of a vehicle approaching said intersection shall enter the same with said vehicle while the stop light is emitting a red light or stop signal for traffic moving on the highway and in the direction that said approaching vehicle is traveling. . . ."

Subsections (a) and (b) are parts of P.L., 1937, C. 407. Subsection (c) was enacted as S.L. 1949, C. 583, § 2. It will be observed that subsection (b) provides that G.S. 20-158 "shall not interfere with the regulations prescribed by towns and cities." "Regulations" necessarily means the ordinances adopted by municipalities for the control of traffic at intersections — rules pertaining to right of way. The provisions of subsection (b) were most likely included to avoid the holding of this Court in *State v. Stallings, supra.* In any event, it has that effect. G.S. 20-158 does not debar municipalities from requiring ambulances to observe traffic lights; by implication, at least, it gives municipalities plenary power to regulate traffic at intersections.

We now inquire whether it was the intent of the General Assembly to confer upon emergency ambulances unrestricted right-of-way privileges. G.S. 20-156(b) confers on police and fire department vehicles the same right-of-way privileges it grants to emergency ambulances.

G.S. 20-157 requires motorists, upon the approach of police and fire department vehicles sounding audible signals, to drive to the right-hand curb or edge of the highway and stop; this requirement does not apply to ambulances. Emergency ambulances are expressly excepted from the requirements of G.S. 20-155, which provides rules for the determination of rights of way at intersections at which there are no traffic control signs or devices. They are also expressly excepted from the requirements of G.S. 20-158.1, which authorizes "yield right-of-way" signs. But they are not, by any reference or express provision, excepted from the requirements of G.S. 20-158(a), which provides for stop signs and the observance thereof. Nor are they expressly or by reference excepted from the requirements of G.S. 20-158(c), which provides for automatic traffic control lights and the observance thereof. The presence of express exceptions in G.S. 20-155 and G.S. 20-158.1, and the absence of such exceptions in G.S. 20-158(a) and G.S. 20-158(c), must be given significance. In construing a statute it will be assumed that the legislature comprehended the import of the words employed by it to express its intent. *State v. Baker,* 229 N.C. 73, 48 S.E. 2d 61. G.S. 20-156(b) was enacted in 1937, G.S. 20-158(c) in 1949; the former was not by reference made an exception to the provisions of the latter, as had been done in other statutes before and after 1949. "Where the Legislature has made no exception to the positive terms of a statute, the presumption is that it intended to make none, and it is a general rule of construction that the courts have no authority to create, and will not create, exceptions to the provisions of a statute not made by the act itself." 57 Am. Jur., Statutes, § 432, p. 453. We conclude that the General Assembly did not intend the right-of-way privileges accorded emergency ambulances by G.S. 20-156(b) to be extended to apply to intersections controlled by automatic traffic lights. We are of the opinion, and so hold, that said Ordinance No. 1134 is valid and enforceable.

This and related questions have been the subject of many opinions by the courts in other jurisdictions. Decisions have, of course, dealt with the construction of applicable statutes. There is a comprehensive annotation, dealing with the subject, in 84 A.L.R. 2d 121, entitled "Ambulance — Injury — Liability." Our decision here is not in conflict with the principles therein stated.

II

Defendants contend that the judge erred in propounding questions and making comments during the course of the trial amounting to an expression of opinion on the weight of the evidence.

Plaintiff's first witness, a traffic officer, was under cross-examination by defendants' counsel. He was being examined with respect to the limits of vision to the east along Main Street from certain points in Duke Street north of the intersection. The judge interrupted, and the following transpired:

"COURT: Doesn't this vision work both ways? If you are traveling west on Main Street you can see so far at a certain point up Duke Street, and coming down Duke Street, you can see so far down Main Street. Doesn't it work both ways?

MR. BRYANT: (defendants' counsel): I would assume so, yes sir.

COURT: One will see as quick as the other will. I mean you would assume this, wouldn't you, according to which way you are going — one going west on Main Street would see one coming down Duke Street as quick as one coming down Duke Street would see one coming on Main Street. Wouldn't that follow?

MR. BRYANT: I don't know, sir. I don't know, sir. It sounds logical and reasonable."

Later, while plaintiff's second witness, a traffic officer, was being questioned by plaintiff's counsel on direct examination with respect to limits of vision, the judge again interrupted. The following colloquy took place between the judge and plaintiff's counsel:

"COURT: . . . it follows that if you can see 90 feet from 25 feet up Duke down Main Street, that from 25 feet down Main you can see 90 feet up Duke Street, doesn't it?

MR. EVERETT: I hate to say, I am not sure.

COURT: He says the intersection is a right angle. Isn't the meat in this coconut the question of who has the right of way in this intersection?

MR. EVERETT: Yes sir.

COURT: And it would follow if the plaintiff came in on a green light, nothing else appearing, he would have the right of way?

MR. EVERETT: Yes sir.

COURT: It also would follow if the ambulance had a business trip and had on its siren and red lights, then all traffic is to yield to that ambulance, doesn't it?

MR. SMITH: No sir, not under the Durham City Ordinance.

COURT: In other words, they would have to comply with the law, so the meat in the coconut is the situation with respect to the light and who had the right. of way, isn't it?

MR. EVERETT: I think, your Honor, under the Statute, there is some additional considerations which we can present to your Honor.

COURT: We were making measurements and corners, and it is a right angle corner, and it figures itself out mathematically, go ahead.

.   .   .   .   .   .

COURT: Ladies and gentlemen, the Court is expressing no opinion in this matter as to the facts and circumstances in this case. Go ahead."

The slightest intimation from the judge as to the weight, importance or effect of the evidence has great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by any expression from the bench which is likely to prevent a fair and impartial trial. *State v. Woolard,* 227 N.C. 645, 44 S.E. 2d 29; *State v. Ownby,* 146 N.C. 677, 61 S.E. 630. "Every suitor is entitled by law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of properly instructed jury. This right can neither be denied nor abridged." *Withers v. Lane,* 144 N.C. 184, 56 S.E. 855.

Comments by the judge, such as appear in the present record, run counter to the intent and meaning of G.S. 1-180. They constitute error. Our inquiry is whether they were prejudicial to appellants.

The comment of the judge that the matter of vision "work(s) both ways" was, in the light of all of the evidence, the statement of an obvious fact, and it was so considered by defendants' counsel who stated, "It sounds logical and reasonable." The judge made the comment both while defendants were presenting evidence by way of cross-examination and while plaintiff was presenting evidence by direct examination. The jury must have understood that the comment applied to the evidence of both parties. The streets were relatively level and intersected at right angles. There was a tall building at the northwest corner of the intersection. The points from which the limits of vision were tested were at the centers of the streets. There were other vehicles standing at both approaches to the intersection. The Chevrolet and ambulance approached and entered the intersection at approximately the same time. The comment as to the comparative ranges of vision could not have prejudiced defendants.

The court commented that "the meat in the coconut is the situation with respect to the light and who had the right of way." The court stated further that "if the ambulance had a business trip and had on its siren and red lights, then all traffic is to yield to that ambulance." This last comment is more favorable to defendants than the law permits in the situation presented. Defendants recognize, as far as their defense is concerned, that the crucial question was, "who had the right of way?" We find the following statement in defendants' brief: "The appellant admits that if the Judge was correct in his theory that the City Ordinance prevailed, then the nonsuit of defendant's counterclaim was correct." The question of right of way was crucial and controlling in defending against plaintiff's action. Plaintiff's right of way was paramount. To avoid liability it was incumbent on defendants to show that he had forfeited his right of way by failure to keep a proper lookout or failure to maintain proper control. The court, in the charge, instructed the jury that notwithstanding plaintiff's favored position he was still under duty "to keep his motor vehicle under control, (and) to keep a reasonably careful lookout."

The judge's comments are not approved, but we do not find them sufficiently prejudicial to defendants to warrant a new trial.

## III

Plaintiff was self-employed. He was an instrument maker and machinist. He had a shop in which he made repairs and did "machine work and blacksmithing." Before the accident he personally did "all of the machine and most of the blacksmith work and helped on the welding." He hired extra help as he needed it. His sole income was the profits from the business. After the accident he was largely limited to supervision of the work because of the injuries he had suffered. He had to employ additional help, and had them do much of the work he had formerly done himself. The labor costs therefore increased.

Over the objection of defendants, plaintiff was permitted to testify that his income for 1959, before the accident, was $5200, that after the accident his income was $2600 for 1960, $3100 for 1961, $3100 for 1962, and $3400 for 1963. He also testified, over objection, there were no unusual circumstances, other than his condition and increased labor costs, affecting income, and he testified as to the amount of increase in labor costs.

In our opinion the evidence was admissible; it was pertinent on the question of loss of earning power. In *Smith v. Corsat,* 260 N.C. 92, 96-7, 131 S.E. 2d 894, we said:

HALL *v.* CHEVROLET CO.

". . . where the business is small and the income which it produces is principally due to the personal services and attention of the owner, the earnings of the business may afford a reasonable criterion to the owner's earning power. *Bell v. Yellow Cab Co.*, 160 A. 2d 437 (Pa. 1960); 15 Am. Jur., Damages, § 96, p. 506; 12 A.L.R. 2d 292. In cases where it is not established that the employment of capital, the use of labor of others, or similar variable factors were predominant in the injured person's business or determinative, for the most part, of the receipts realized, it is held that evidence of profits, in a restricted sense, or income (even if one or more of the factors mentioned were present and influential) may be used for the purpose of aiding in establishing a standard for the calculation of damages, if it conforms to the requirements of proximate cause and certainty. It has some bearing upon the question of damages, whether of loss of time or loss or diminution of earning capacity. Such evidence furnishes as safe a guide for the jury, under proper cautionary instructions, as may be found, in the assessment of damages, and becomes useful in helping to determine the pecuniary value of loss of time or impairment of earning capacity." (Citing cases).

No error.