THOMAS H. RUSSELL AND WIFE, IRIS W. RUSSELL, THOMAS H. RUSSELL, JR., AND EDDIE A. ARRANTS, PLAINTIFFS v. THE TOWN OF MOREHEAD CITY, A MUNICIPAL CORPORATION, EDWARD S. DIXON, MAYOR OF THE TOWN OF MOREHEAD CITY, DAVID WALKER, WILLIAM CONDIE, ALBERT LEA, JR., RICHARD ABELL, WILLIAM (BILL) SCARPETTI, STEVE SANDERS, DWIGHT LUCAS, DAVID McCABE, LARRY HOPKINS, JOHN HESTER, AND WILLIE STUBBS, DEFENDANTS

No. 883SC134

(Filed 19 July 1988)

1. Trial § 10.1— comments by trial judge—cumulative prejudice

In an action for damages and injunctive relief arising from disputed ownership of land and defendant's forcible entry onto that land, defendants received a new trial due to the cumulative prejudicial effect of comments by the trial judge which disparaged defendants as public officials and government employees and emphasized the rights of private citizens over government authority.

2. Assault and Battery § 3— civil battery—spraying with water hose—evidence sufficient for jury

There was sufficient evidence to go to the jury on a civil battery claim in an action arising from the town's forcible entry onto disputed property where there was evidence that defendant sprayed two people with a water hose, held in one instance twelve inches from the victim's face and in the other knocking off the victim's glasses and hat.

APPEAL by defendants from *Bailey (James H. Pou), Judge.* Judgment entered 18 September 1987 in Superior Court, CARTERET County. Heard in the Court of Appeals 8 June 1988.

Plaintiffs filed their complaint on 17 October 1986 alleging the following: that plaintiff Thomas H. Russell and his wife, plaintiff Iris Russell, are owners in fee simple of a tract of land located in Morehead City, North Carolina; that the land in question was covered by the navigable waters of Bogue Sound until 1955, when plaintiffs took possession of it; that defendant Town of Morehead City (hereinafter, defendant Town), defendant Mayor Dixon, and the other officials of defendant Town were fully aware that they had no valid claim to the land in question; that on 13 October 1986, defendant Town through its mayor, defendant Dixon, its city manager, defendant Walker, its police, defendants Condie, Lea, Abell, Scarpetti, and Sanders, and its employees, defendants Lucas, McCabe, Hopkins, Hester, and Stubbs, violently entered

upon the land in question; that upon the direction of defendant Town's city manager, defendant Walker, defendant police officers invaded the property, assaulted plaintiff Thomas H. Russell, Jr., and ripped down plaintiffs' fence; that defendants posted vessels stored on the land in question with notices directing removal of the vessels within seven days upon threat of removal of the vessels by defendant Town; and that the acts of defendants were malicious, wanton, and in reckless disregard of plaintiffs' rights. The complaint also alleged, in a second cause of action, that defendant Lea, a police officer for defendant Town, viciously assaulted plaintiff Thomas H. Russell, Jr. The complaint prayed for temporary and permanent injunctive relief, compensatory damages, and punitive damages.

Defendant Town and defendant Dixon filed a timely answer, denying the material allegations of the complaint and further alleging that the land in question is owned by defendant Town as a part of the Town's street system and is not subject to appropriation by adverse possession. Defendants further filed a counterclaim alleging that the land in question consisted of a portion of Ninth Street, a street in defendant Town's street system running southward from Shepard Street and terminating at the navigable waters of Bogue Sound; that plaintiffs used the land in question by express permission of defendant Town; and that approximately two weeks prior to 13 October 1986, plaintiffs erected a barrier across Ninth Street blocking access to Bogue Sound. Based on these allegations, defendants sought injunctive relief to prevent plaintiffs from blocking access to the land in question. Plaintiffs' timely reply denied defendants' allegations and reasserted plaintiffs' claim of adverse possession.

The remaining defendants filed a timely answer, denying the material allegations of plaintiffs' complaint and asserting that any actions by defendant Lea against plaintiff Thomas H. Russell, Jr., were taken in self-defense. Defendants Hopkins and Lea further asserted a counterclaim against plaintiffs Thomas H. Russell and Thomas H. Russell, Jr., alleging that plaintiff Thomas H. Russell, Jr., at the direction of plaintiff Thomas H. Russell, assaulted defendants Hopkins and Lea by spraying them with a water hose. The counterclaim sought compensatory and punitive damages. Plaintiffs filed a timely reply to this counterclaim, admitting that plaintiff Thomas H. Russell, Jr., sprayed defendants Hopkins and

Lea with a water hose, but asserting that he did so to protect himself, his father, and his father's property from the unwarranted trespass of defendants.

On 26 May 1987, defendant Town and defendant Dixon filed, with leave of court, an amended answer and counterclaim that asserted an additional claim for relief seeking damages and injunctive relief for trespass by plaintiff. This additional claim alleged that the property in question was conveyed to defendant Town by a deed, dated 10 March 1987, from the State of North Carolina.

The matter was heard before a jury. At the close of plaintiffs' evidence, defendants moved the court for directed verdicts as to all plaintiffs' claims. The court denied defendants' motions. At the close of all evidence, the court dismissed defendants' counterclaims and, again, denied defendants' motions for directed verdict.

Six issues were submitted to the jury and answered as follows:

1. Are the plaintiffs, Thomas H. Russell, Sr. and wife, Iris, the owner of and entitled to possession of the land as described in the Complaint?

Answer: YES

2. Did the Defendant Albert Lea, Jr. commit an assault and battery upon the Plaintiff Thomas H. Russell, Jr.?

Answer: YES

3. If so, did the Defendant David Walker aid and abet in said assault by directing the actions of the Defendant Lea?

Answer: YES

4. What damages, if any, did the Plaintiff Thomas H. Russell, Jr. sustain as a proximate result of the assault and battery committed upon him?

Answer: YES $88.00

5. What amount of punitive damages, if any, is the Plaintiff Thomas H. Russell, Jr. entitled to have and recover of the Defendant Albert Lea, Jr.?

Answer: YES $1.00

6. What amount of punitive damages, if any, is the Plaintiff Thomas H. Russell, Jr. entitled to have and recover of the Defendant David Walker?

Answer: YES $17,300.00

The court entered judgment in accordance with the jury's verdict. Defendants appeal.

*Wheatly, Wheatly, Nobles and Weeks, P.A., by C. R. Wheatly, Jr., and Stevenson L. Weeks, for plaintiff-appellees.*

*Nelson W. Taylor, III, and M. Douglas Goines for defendant-appellants.*

PARKER, Judge.

In this appeal, defendants have raised in their brief thirty-six assignments of error in reference to some one hundred forty-nine exceptions. In substance, defendants contend that the conduct and comments of the trial judge prejudiced the jury against defendants; that the trial court erred in denying defendants' motion for directed verdict on the issue of adverse possession; that the trial court erred in denying defendants' motion for directed verdict on the issue of defendant Walker's liability for assault and battery; that the trial court erred in dismissing at the close of all evidence the counterclaims of defendant Town and of defendants Lea and Hopkins; that the trial court erred in tendering to the jury certain instructions and refusing to tender to the jury certain other instructions; that the trial court erred in refusing to allow counsel for defendants to argue the grounds for their motions for directed verdict at the close of all evidence, for judgment notwithstanding the verdict, and for a new trial; that the trial court erred in denying defendants' motions for judgment notwithstanding the verdict and for a new trial; and that the trial court erred in admitting some evidence and refusing to admit some other evidence. For

the reasons that follow, we conclude that defendants are entitled to a new trial.

At the outset, we note three of the thirty-six questions presented in defendants' brief merely paraphrased a rule of evidence and then directed the Court to "examine each of the exceptions noted." The nineteen exceptions noted by these latter questions were not specifically identified, characterized, or discussed in the brief. The practice of directing the Court of Appeals to examine for itself each exception and to perform the task of applying the rule of evidence cited to each exception noted, foists on the Court the role of advocate as well as judge. An appellant's failure to relate authority cited to appellant's assignment of error or to any argument in support thereof violates Rule 28 of the North Carolina Rules of Appellate Procedure. *Brown v. Boney*, 41 N.C. App. 636, 255 S.E. 2d 784, *disc. rev. denied*, 298 N.C. 294, 259 S.E. 2d 910 (1979).

[1] In their first assignment of error, defendants contend that the trial judge's comments and conduct prejudiced the jury against defendants, their counsel, their witnesses, and their case. We agree for the reason that some of Judge Bailey's statements to the jury intimated his opinion as to the correct outcome of the case and the cumulative effect of these statements and other extraneous remarks mandates a new trial.

Every litigant in the courts of this State "is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury." *Withers v. Lane*, 144 N.C. 184, 192, 56 S.E. 855, 857-58 (1907). *See also Colonial Pipeline Co. v. Weaver*, 310 N.C. 93, 103, 310 S.E. 2d 338, 344 (1984). Generally, the trial judge occupies an exalted position in the trial court. *McNeill v. Durham ABC Bd.*, No. 524PA87, slip op. at 6 (N.C. 2 June 1988); *Colonial Pipeline Co.*, 310 N.C. at 103, 310 S.E. 2d at 344; *State v. Lynch*, 279 N.C. 1, 10, 181 S.E. 2d 561, 567 (1971). It is well recognized that juries earnestly seek to ascertain the trial judge's opinion on the controverted issues and to shift onto the court the responsibility of decision making. *Withers*, 144 N.C. at 188, 56 S.E. at 856; *In re York*, 18 N.C. App. 425, 429, 197 S.E. 2d 19, 21, *cert. denied*, 283 N.C. 753, 198 S.E. 2d 729 (1973). Therefore, "The slightest intimation from the judge as to the weight, importance or effect of

the evidence has great weight with the jury . . . ." *Upchurch v. Funeral Home*, 263 N.C. 560, 567, 140 S.E. 2d 17, 22 (1965). *See also Colonial Pipeline Co., supra.*

As a result of these considerations, the rule in this State is that the trial judge is prohibited from making comments at any time during the trial which amount to expressions of opinion as to what has or what has not been shown by the evidence. *Saintsing v. Taylor*, 57 N.C. App. 467, 472, 291 S.E. 2d 880, 883-84, *disc. rev. denied*, 306 N.C. 558, 294 S.E. 2d 224 (1982). *See also* G.S. 1A-1, Rule 51(a). Any remark by the presiding judge made in the presence of the jury that tends to prejudice the jury against the unsuccessful party may be grounds for a new trial. *Colonial Pipeline Co.*, 310 N.C. at 103, 310 S.E. 2d at 344; *Homes, Inc. v. Holt*, 266 N.C. 467, 475, 146 S.E. 2d 434, 440 (1966).

To determine whether a party's right to a fair trial has been impaired by the remarks of the trial judge, we must examine the probable effect of the remarks upon the jury, irrespective of the motives of the trial judge. *Colonial Pipeline Co.*, 310 N.C. at 103, 310 S.E. 2d at 344; *Saintsing*, 57 N.C. App. at 472-73, 291 S.E. 2d at 884. This test requires an examination of the circumstances under which the remarks were made and the probable meaning of the remarks to the jury. *Colonial Pipeline Co.*, 310 N.C. at 103, 310 S.E. 2d at 344; *Merchants Distributors v. Hutchinson and Lewis v. Hutchinson*, 16 N.C. App. 655, 661, 193 S.E. 2d 436, 441 (1972).

While defendants have cited seventy-five exceptions and discussed twenty-three of those exceptions in their brief, we find the following comments of the trial judge illustrative of a cumulative prejudicial effect on defendants' case.

On the second day of trial, counsel for defendants asked the court to excuse the mayor of defendant Town, defendant Dixon, and several of defendant Town's commissioners. The trial judge responded, "It would suit me just fine if they never come back." On the third day of trial, while plaintiffs continued to present evidence, counsel for defendants again requested the court's permission to excuse defendant Dixon and several councilmen so they could attend a ship's christening. Judge Bailey responded, "All politicians go to all meetings. I imagine they will have a pigpicking on the grounds." Thereafter, plaintiffs rested, and de-

fendants commenced to put on their evidence. One of defendants' witnesses, defendant Condie, Chief of Police of defendant Town, stated that when he arrived at the disputed property on 13 October 1986, he saw the defendants employed by defendant Town's Public Works Department sitting on the land adjoining the disputed property. At that point, Judge Bailey interjected, "Typical, public service workers sitting around doing nothing."

The fourth day of trial was 17 September 1987, the two hundredth anniversary of the signing of the United States Constitution. In honor of this occasion, before defendants continued with their evidence, Judge Bailey addressed the following remarks to the jury:

Good morning, ladies and gentlemen. Ladies and gentlemen, before we get into this, I have several things on my mind that don't have anything to do with this case except indirectly. Two hundreds year [sic] ago we adopted in this country a constitution. It, and perhaps not coincidental that the case we are trying today, is a case in which citizens are in conflict with government. The constitution of the United States puts the government itself under law. We are the only country on earth in which the government itself is placed under law. Your public officials, your legislature, your government and your judges cannot with impunity disregard the law of the land, which is the constitution. The constitution is an interesting document. It gives very few powers to government. It mostly is a document that says what government cannot do. And it clearly says that all of the powers not specifically granted to government are reserved to the people. That's you and me. You can talk on the telephone with little or no fear that your conversation will be monitored; your right of privacy. Your right of protection from the invasion of your home is guaranteed by the constitution. You and I can get signs and go out here and picket the courthouse, demand that the place be burned down. Unless we try to burn it, we are perfectly safe. The constitution gives you and me the right to petition for the redress of grievances. Whether they are real or imaginary, grievances we can speak our piece. The newspapers can write any number of articles saying that the government is a bum; that the Legislature is incompetent, the editor won't be put in jail. If he had been,

Johnathan Daniels would not have lasted more than ten minutes. But this is the constitution. You can go to any church or no church that suits you. Your right to worship your god in your way is guaranteed by the constitution. The government can't prevent it, not legally, and the courts say what the government can and can't do. But the courts themselves are under restraint. Look how clearly the thing is set up. We have three sections of government, three branches. The legislative branch controls the money. The executive branch controls the army and the judicial branch keeps the other two honest. But without all three of us, very little can be accomplished. That's the constitution.

I know that you didn't come down here in the middle of the night to hear me make a speech. I am not going to make much of one. I am about through. But I do wish when you go home this evening that you pick up a copy of the News and Observer for this morning and read the lead editorial. It tells you a lot about the constitution. I don't ordinarily read the News and Observer, almost never endorse what they say, but they are right on this one. Take a look at it and think about the fact that you live in a country in which the government itself is subject to law.

At the close of all the evidence, in the presence of the jury, the trial judge predicted that the charge conference would take only a few minutes and "might not be over real fast." When counsel for defendant expressed doubts that they could finish that quickly, the judge responded, "You'd be surprised. I have already got my mind made up."

While one such comment, standing alone, might not be regarded as prejudicial, the cumulative effect of the foregoing comments by Judge Bailey, which disparaged defendants as public officials and government employees and which emphasized the rights of private citizens over governmental authority, diluted defendants' cause and amounted to an expression of opinion by the trial judge as to the proper outcome of the case. *See McNeill v. Durham ABC Bd., supra.* Moreover, although the two hundredth anniversary of our federal Constitution deserved some recognition by the court, the substance of the case, which involved alleged trespass and assault by government officials on the as-

serted private property of plaintiffs, required restraint and neutrality on the part of the trial judge. As a result of the cumulative prejudicial effect of Judge Bailey's remarks on defendants' case, defendants are entitled to a new trial.

Because defendants are entitled to a new trial, we do not address all of the remaining assignments of error before this Court for review. However, one assignment of error involves an issue likely to arise on retrial.

[2]  At the close of all evidence, the trial judge dismissed the counterclaims of defendants Lea and Hopkins against plaintiffs Thomas H. Russell, Sr., and Thomas H. Russell, Jr., for battery. The dismissal of these counterclaims was erroneous.

Battery is an immediate harmful or offensive contact with one's person that is intentional and unpermitted. *Dickens v. Puryear*, 302 N.C. 437, 445, 276 S.E. 2d 325, 330 (1981). At trial, defendant Hopkins testified that on 13 October 1986 he was instructed as supervisor of streets and sanitation for defendant Town to go to the disputed property to remove a fence and clean up debris in the area. As defendant Hopkins began to pull up the fence, plaintiff Thomas H. Russell, Jr., sprayed defendant Hopkins with a water hose held about twelve inches away from defendant Hopkins' face. Defendant Lea testified that he was at the disputed property as a police lieutenant of defendant Town. Defendant Lea testified that when he saw plaintiff Thomas H. Russell, Jr., spray defendant Hopkins with the hose, he quickly walked toward them. As he approached, plaintiff Thomas H. Russell, Jr., turned the hose on defendant Lea and sprayed him in the face, knocking off his glasses and his hat. These facts are sufficient to go to the jury on the issue of battery.

The remaining assignments of error raised by defendants' brief are unlikely to arise on retrial. For the foregoing reasons, defendants are entitled to a

New trial.

Judges JOHNSON and COZORT concur.