The opinion of the Court was delivered by the
 

 Chief Justice.
 

 This is a motion for a new trial, on the ground that the Court intimated its opinion to the Jury of the matter in issue. The act of Assembly, relative to the duty of a Judge in charging, forbids him “ to give an opinion whether a fact is fully, or sufficiently proved, such matter being the true office and province of a Jury and it directs him
 
 6i
 
 to state, in a full and correct manner, the facts given in evidence, and to declare and explain the law arising thereon.”
 

 The evident design of this law was to preservo the purity of the trial by Jury, and thus to secure to every' man, whose rights were controverted, a decision on the facts put in issue, which should be the result of the Jury’s investigation of the evidence^ uninfluenced and ¡mid-
 
 *86
 
 assed by the opinion of the Judge, whose province it is to pronounce whether testimony be admissible, and to instruct the Jury as to the law, accordingly as they shall believe the facts proved, or otherwise.
 

 It is not for this Court to discuss the wisdom or expediency of this law, or to pervert its true construction, under a belief that no mischief can be produced thereby, or even that justice can be more substantially administered. It is the will of the Legislature, and we are bound to obey it; so that every man who conceives himself aggrieved by a disobedience to the law, has a right to be heard here, and if he can establish his case, lias a right to a new trial without any necessity, on the part of this Court, of enquiring into the merits of the verdict. For, although it should appear to this Court, that the evidence spread upon the record is such, that if believed by the Jury, it well warranted the verdict; yet, if it also appear that the Judge, in his charge,
 
 “
 
 gave an opinion whether a fact was fully or sufficiently proved,it cannot be told how far the verdict was produced by the testimony, since the Jury were to judge of its credibility, or by an intimation of the opinion of the Judge. The propriety of the verdict, then, or its conformity with the evidence, we leave out of the question, and desire to he understood as giving no opinion upon it. For, if the motion for a new trial were overruled because this Court approved of the verdict, and it should, at the same time, appear that the Judge had departed from the direction of the law, in charging the jury, it would be deciding, in effect, that disobedience to the law may be tolerated or not, according to the consequence which flows from it. If a verdict contrary to, or unsupported by, evidence, has been produced by it, the party shall be entitled to a new trial. But if the evidence justifies the verdict, and the right of the cause has been duly administered, the charge of the Judge, although deviating from the law, shall be overlooked. But this is not the-
 
 *87
 
 rule proscribed by tbe Legislature ; they have inhibited the declaration of the Judge’s opinion on the proof of facts, in every case, presuming that, in
 
 every case,
 
 it encroaches on the proper functions of a Jury, and that, in
 
 every case,
 
 it imparts a bias to the judgment of the Jury, which they are disposed to receive with confidence, and seldom make an effort to resist.
 

 I proceed to examine the charge with a single eye to the question, whether it be conformable to the act of Assembly.
 

 It begins with a caution to the Jury against being influenced by party or political attachment, or by a former verdict on the will, which had been rendered in Craven comity, and reminding them that they were sworn to deckle according to the evidence, and to that only. This was very necessary, and called for by the nature of the disposition in the will, which being favorable to two persons, on account of their personal exertions in a contest of party, was peculiarly calculated to awaken tbe ordinary passions and propensities on such occasions. The Judge then directs their attention to the true questions of fact in issue, the capacity of the testator, and whether the will was. obtained by fraud or not. He first describes what the law considers a disposing mind, and its presumption that every man possesses it until a disqualification was shown : and in doing this, the Judge exorcised his proper functions with equal skill and perspicuity. The general instruction that follows on the means by which fraud may be proved, is also unexceptionable.
 

 But when the Judge proceeds to sum up the circumstances which he calls suspicious, and which, if they exist, the law will not support the will, that part of the charge, cannot be read, without a belief that it conveyed an intimation to the Jury, of his own opinion, that they were suspicious and that they were proved to exist; and if, in addition thereto, there are other suspicious circumstances, such as I shall mention to you present-
 
 *88
 
 ]y? the law. will not support such a will. For instances if the mind of the testator was weak, if it was made secretly and drawn when nobody was present, and in the absence of the relations of the testator: If there was nobody present but the testator and the attorney, and it was in the night, or early in the morning, after a course of habitual drunkenness before he could probably have recovered from the effects of his debauch: If the will, upon the face of it, contained a statement of the reasons which induced the testator to make certain bequests, and it appeared that the statement was untrue : If James Reel had relations against whom he had no resentment, and those relations, or some of them, were widows and orphans, unprovided for: If then ho appeared, afterwards,- not to know with reasonable correctness the contents of the will: If he left the paper in the possession of his attorney, and after-wards endeavoured to regain the possession of if, and the attorney, by contrivance or fraud, withheld it: If shortly before the date of the will, be made some other (arrangement, or if, to make a will a different one,, would be evidences of fraud.”
 

 These circumstances, thus grouped together, before the statement of the testimony, must unavoidably have been understood by the Jury, as-the impression made on the. Judge’s mind, by weighing and comparing the evidence, as the result of his view of those parts of it, which related to the subjects touched upon 5 and w-as calculated to make a lodgment in their minds, notwithstanding the conclusion of the paragraph. “ That whether those circumstances or any existed in this case, it was their duty to ascertain from the evidence.”
 

 The truth of some of these facts, thus hypothetically stated, depended upon the weight anil comparison of conflicting testinsony, which was a labour less likely to be encountered by the J ury, if they believed it had already been done by the Judge. For example, “ if James Jteel had relations against whom he had no resentment.”
 

 
 *89
 
 The, witnesses, Jones, Tolar, Powell, and Whitford, depose that the testator was on good terms with his re-lal-ions. The witnesses, Hall, Lewis, Dunn, and Hire, swear to the declarations of the testator, made at different times, tliat his people should be no belter for what lie hud, that they cared nothing about him, that his brolhers differed from him in politics, and neglected hita in sic!:ness, and that his folks came like bu&zards about carrion when he was sick.”
 

 " If the will, upon the free of it, contained a statement of reasons which induced the testator to make certain bequests, and it appeared that the statement wus an-true.” The only reason given in the will for any bequest. in, that for BUckledge and Allen, and that is for their hating, heretofore, borne the greatest burthen of the expenses and labour in supporting the republican cause in the county of Craven, and because the testator was of the same political principles, and very desirous of having them supported. Here arc three distinct motives stated, an inducing him to make the bequest, viz: the legatees having borne the greatest burthen of the expense and labour, in supporting the republican cause j his being of the same political principles, and his desire to have them supported. There is no evidence in the case tending to shew, in the least degree, that the two last reasons are false. As to the first reason, the only evidence is that of J. P. Smith, who admits that Black-ledge treated liberally, but Alien less than any other candidate, and had expended less in support of the republican party, than almost any man of note in it, and had not been generally known as of the party, until party contests had gone a great way. Mr. Smith goes as far back as the period of Mr. Jeíiérson’s first election, which was in 1800, but does not specify when it was tliat Mr. Alien was genera! Iv known as of the party 5 and the Jury might have had some difficulty from
 
 *90
 
 this evidence, to infer the falsehood of the reason that Biackledge and Allen had, heretofore, (that is before
 
 °
 
 , 1815,) boi'nc. the burtiien of labour and expense.
 

 <í |f jie ]eft the paper in possession of his attorney, and afterwards endeavoured to regain the possession of it, and the attorney, by contrivance or fraud, withheld it.”
 

 Of the several witnesses, Hutchins, Powell, Shackle-ford, Willis, arid Hall, whose testimony relates to this point, none of them speak of the testator’s having endea-voured to get his
 
 iwill
 
 from Biackledge ; they all speak of papers, or a packet of papers
 
 ;
 
 and Thomas deposes, that in 1815, the testator told him at Newbern that he meant to put his notes and accounts in the bands of Biackledge and Allen. It was therefore to be considered by the Jury, whether he had endeavored to regain possession of the
 
 will.
 

 “
 
 In this case it is for you to enquire why all this precaution was taken of sending for Ernull, and having Cratch for a witness, when the paper was taken out of the trunk, if there was no fraud.”
 

 The only witness as to this point is Cratch, who merely says that he saw Biackledge search in his trunk, and find the paper produced as a will. For what purpose the witness went to Blackledge’s, or whether his abode was there, does not appear. The charge conveys the idea that Biackledge procured Cratch to be there for the purpose of attesting the finding of the paper, and that he was called upon as a witness. Nor is there the slightest evidence that Ernull was sent for, or vvas even present. Both circumstances are stated in the charge, as if proved as facts. The law case stated by the Judge, of the servant being called upon by his master to notice the time he left home, could only illustrate the suspicion; and even presumption growing out of unusual precautions, upon the supposition that Cratch had been specially called upon by Biackledge to witness the finding of the will in the chest: and the very statement of the case was cal-
 
 *91
 
 calated to make the Jury suppose that necessary fact was proved. On no other principle could it bear on the point.
 

 “
 
 If the w‘!l was fairly executed, and attested by the subseribing witnesses, would not their evidence be suili-cient to establish it, and would it have occurred to Mr. Khickledge to use these precautions, if these be facts ?
 

 “
 
 You will consider of them ami form your own conclusions.”
 

 This does not seem to leave the consideration of the evidence to the Jury without an intimation of the Judge’s opinion upon its force and effect.
 

 “ Masters says, that the testator always seemed to have a capacity to do business, whether drunk or sober ; but tisis witness, when cross-examined, states that he forms this opinion from a single transaction, in which he saw him attempting to bargain with Lewis for a chair.”— Upon looking at the testimony, it does not appear that tiie witness had so formed his opinion, nor does he state upon what U is founded. lie says, that whether drunk or sober, no man could take advantage of him, and he ..aw him attempt, to jew Lewis for a bargain in a chair, which is the only instance of his attempting to bargain that he knows of. Ills .general capacity for business is one part of the evidence ; his freedom from imposition, whether drunk or sober, in a bargain, is another, and as the witness never saw him attempt to bargain but once, it is an inference that his opinion may be founded o»*thaL
 

 By the evidence of this witness and the other subscribing witness, it appears that the paper was executed by the supposed testator, between sun-rise and breakfast time : they have stated to you that he was sober. How a man who had been continually drunk for seven or eight days, could be sufficiently restored to his understanding by one night’s sleep, to enable him to dispose of his property with reason, especially when it is proved by another witness, that after a night’s sleep at his house; he cerned as drunk in the morning as he was the overnight.
 
 *92
 
 will be a proper matter for reflection anil enquiry with you”
 

 The latter circumstance is cited as a fact, which is put in opposition to the first fact, both being assumed as such 5 now, though evidence may be irreconcileable, facts cannot be.
 

 Upon considering Cue whole of the charge, it appears to me that its general tendency is to preclude that full and free enquiry into the truth of the facts, which is contemplated by the law ; with the purest intentions however, on the part of the worthy Judge, who receiving a strong impression from the testimony adduced, was willing that what he believed to be the very right and justice of the case should be administered.
 

 I am not unaware of the difficulty of concealing all in dications of the conviction wrought on the mind by evidence throughout a long and complicated cause $ but the law has spoken, and we have only to obey. A new trial is awarded.