### J. A. WITHERS v. J. W. LANE.

(Filed 20 March, 1907).

**Revisal, Sec. 535—Trial Judge—Intimation of Opinion of Fact.**—Under Revisal, sec. 535, the trial Judge is restricted to plainly and correctly stating the evidence and declaring and explaining the law arising thereon; and when his peculiar emphasis, or language, or manner in presenting or arraying the evidence indicates his opinion upon the facts, or conclusions of fact, a *venire de novo* will be ordered.

CIVIL ACTION, tried before *Peebles, J.,* and a jury, at November Term, 1906, of the Superior Court of HARNETT County. Verdict and judgment for defendant. Plaintiff appealed.

This action was brought to recover the possession of two mules. The plaintiff bought a mule from the defendant for $175 and gave his note for the purchase-price, secured by a mortgage on the two mules described in the complaint. He alleged that the defendant had warranted the soundness of the mule he bought and that afterwards he proved to be unsound; that he returned the mule to the defendant, paying him $30 for the use of it, and they then agreed to compromise and settle their differences, the defendant specially agreeing to surrender the note and mortgage; but that he got possession of the two mules in violation of the agreement and refused to return them.

The Court charged the jury, in part, as follows: "It is alleged in the complaint and admitted that in March, 1905, plaintiff conveyed the mules in question to defendant to secure the payment of a note for $175, due 1 October, 1905. This put the title to the mules in the defendant. But the plaintiff alleges that on 1 December, 1905, there arose a dispute between him and defendant as to the soundness of the mule's eyes, and he went to Dunn, saw the defendant

and compromised and settled the whole matter; that the defendant took the mule back, received $30 for its hire, and promised to surrender the note and the mortgage to plaintiff. This action, therefore, depends almost entirely upon how you find the first issue. Upon that issue the burden is upon the plaintiff to satisfy you by the greater weight of evidence that the $30 paid 1 December, 1905, at Dunn, was paid and received in full compromise of the $175 note. If he has done that, then you should answer the first issue 'Yes'; otherwise, you should answer it 'No.' In other words, the whole matter depends upon whether you find the facts to be as testified to by plaintiff or as testified to by defendant and Jethro McLamb. The testimony of plaintiff is not corroborated by a single witness, but is contradicted by his own affidavit filed in this action on 2 December, 1905, the next day after the $30 was paid. In that affidavit he swore that the mule was his property, and he was entitled to the immediate possession of it. If the settlement was made the day before the mule was taken back by defendant, this affidavit was false. If the affidavit was true when filed, his statement here as to the settlement was false. He is contradicted by the receipt which he took from defendant when the $30 was paid. This receipt says the money was paid on the mule note. He is contradicted by defendant and McLamb, who say the money was paid on the mule note, and nothing was said about a compromise. On the other hand, Lane is corroborated by McLamb, and by the receipt given to plaintiff 1 December, 1905, for the $30; and if you find that the receipt on the $175 (mortgage note) was put there at the time the money was paid, and in the presence of plaintiff, then he is corroborated by that.

"In passing upon the testimony of plaintiff, it is your duty to consider the fact that he is interested in the result

of this action; ascertain, as best you can, what influence this will have upon his testimony; consider what the witnesses said about his good character; consider the fact that he is contradicted by his affidavit filed in this action and by the receipt he took for the $30, and then give to his testimony that weight and credit which, under all the circumstances, you think it entitled to. If you think he told the truth, you should give to his testimony the same weight and credit you would give to any other witness. Plaintiff testified that, when the $30 was paid, no one was in the office but him and Lane. Lane and McLamb testified that plaintiff Lane, McLamb, and plaintiff's brother, S. W. Withers, were in the room. S. W. Withers was present in the court-room and a witness for plaintiff, and he did not put him on the stand to support himself and contradict Lane and McLamb. This circumstance you can consider also. When you go to consider Lane's testimony it is your duty to consider the fact that he is interested in the result of this suit, and you must ascertain, as best you can, what effect that interest had upon the truthfulness of his testimony; consider what the witnesses said about his character, the fact that he is corroborated by McLamb and by the receipt given plaintiff when the $30 was paid, which said, 'Received $30 on mule note,' and then give to Lane's testimony that weight and credit which, under all the circumstances, you think it is entitled to.

"The greater weight of the evidence does not necessarily mean the greater number of witnesses, but it means that testimony which carries home to your hearts and minds the greater amount of conviction. Where conflicts of testimony can be reconciled in a way consistent with the honest convictions of the witnesses, it is your duty to do so; but when it cannot thus be reconciled, it is your duty to determine which lied. The plaintiff says that the $30 was paid in full settle-

ment and compromise of the $175 note, and that the mule was taken back by Lane. Lane and McLamb say that the $30 was paid on the $175 note, and not a word was said about any compromise or about taking the mule back. The conflict between these statements cannot be reconciled—the plaintiff lied or Lane and McLamb lied. It is for you to say who told the lie. If the testimony of the plaintiff, unsupported, satisfies you that the $30 was paid for the hire of the mule, which was taken back, and the $175 note and mortgage were to be surrendered, then it is your duty to answer the first issue 'Yes'; otherwise, to answer it 'No.' If you answer the first issue 'Yes', you should answer the second and fourth issues 'Yes'; and to the third issue, what you find the mules were worth when seized, if you answer the first issue 'No', you should answer the second and the fourth issues 'No', and make no answer to the third.

"At the request of the defendant I here give all the evidence introduced."

His Honor then proceeded to state the evidence. Exceptions to the charge were taken by the plaintiff. A verdict was returned for the defendant, upon which judgment was entered and the plaintiff appealed.

*Godwin & Davis* and *D. H. McLean* for plaintiff.
*Stewart & Muse* and *Godwin & Townsend* for defendant.

WALKER, J., after stating the case: The Legislature has wisely provided that no Judge, in charging a jury, shall intimate whether a fact is fully or sufficiently proven, it being the true office and province of the jury to weigh the testimony and decide upon its adequacy to establish any issuable fact. The Judge's function is positively restricted to stating in a plain and correct manner the evidence given in the case and to declaring and explaining the law arising thereon. Revisal,

sec. 535. He may clearly indicate to a jury what impression the testimony has made upon his mind or what deductions should be made therefrom, without expressly stating his opinion upon the facts. This may be done by his manner or peculiar emphasis or by his so arraying and presenting the evidence as to give one of the parties an undue advantage over the other, or again, the same result will follow the use of language or a form of expression calculated to impair the credit which might otherwise and under normal conditions be given by the jury to the testimony of one of the parties. *State v. Dancy,* 78 N. C., 437; *State v. Jones,* 67 N. C., 285. It can make no difference in what way the opinion of the Judge is conveyed to the jury, whether directly or indirectly. The act forbids an intimation of his opinion in any and every form, the intent of the law being that each of the parties shall have an equal and a fair chance before the jury. Construing this statute, *Judge Nash* said: "We all know how earnestly, in general, juries seek to ascertain the opinion of the Judge who is trying a cause upon the controverted facts, and how willing they are to shift their responsibility from themselves to the Court. The governing object of the act was to guard against such results and to throw upon the jurors themselves the responsibility of responding to the facts of the case. Nor is it proper for a Judge to lead the jury to their conclusions on the facts." *Nash v. Morton,* 48 N. C., 3.

As this case must go back for a new trial, it will be prudent and perhaps also seemly that we should refrain from commenting upon the testimony and the charge any more than is absolutely necessary for the purpose of deciding the question before us. We cannot read the instructions of the Court without being impressed with the belief that its general trend is clearly against the plaintiff; and that it is argumentative cannot well be doubted. It was not intended to be so, we

are quite sure, but it nevertheless places the plaintiff's testimony in an unfavorable light before the jury, while that of the defendant is treated with greater consideration. Whether the plaintiff had in fact been contradicted or not, was a question for the jury to decide, and not for the Court. The latter might very properly have called· attention to the apparent conflict in the testimony, and have explained to the jury the nature of the different kinds of evidence, and it may have been within the Judge's province to have stated what the evidence on either side tended to prove, but he could not tell the jury what it actually did prove, and this could not be done either by the manner of charging the jury or by the peculiar language employed. Apart from all this, there are expressions of the Court which we cannot approve and which we think tended to prejudice the plaintiff. The adverse tenor and tone of the charge must have had the same effect. The general result is that the plaintiff was made to carry a greater burden than the law imposed upon him.

The parties had taken issue upon the fact of settlement, and the plaintiff was entitled to have his testimony fairly considered by the jury, even though his statements had conflicted with those of the defendant and another witness. Instead, his testimony was contrasted with that of the defendant in a way which must have discredited him with the jury at the very outset or diminished the force and weight of what he had said. This was a hindrance to him, if not a distinct handicap.

The learned and able Judge who presided at the trial, inspired, no doubt, by a laudable motive and a profound sense of justice, was perhaps too zealous that what he conceived to be the right should prevail, but just here the law, conscious of the frailty of human nature at its best, both on the bench and in the jury-box, intervenes and imposes its restraint upon

the Judge, enjoining strictly that he shall not in any manner sway the jury by imparting to them the slightest knowledge of his own opinion of the case. The English practice and also the Federal practice permit this to be done, but not ours. With us the jury are the sole and independent triers of the facts, and we hold the right of trial by jury to be sacred and inviolable. Any interference with it is prohibited.

The books disclose the fact that able and upright Judges have sometimes overstepped the limit fixed by the law, but as often as it has been done this Court has enforced the injunction of the statute and restored the injured party to the fair and equal opportunity before the jury which had been lost by reason of the transgression, however innocent it may have been; and we must do as our predecessors have done in like cases. Our view that the charge violates the statute is sustained by the cases already cited, to which the following may be added: *State v. Bailey,* 60 N. C., 137; *State v. Thomas,* 29 N. C., 381; *State v. Pressley,* 35 N. C., 494; *State v. Rogers,* 93 N. C., 525; *State v. Dick,* 60 N. C., 440; *Reel v. Reel,* 9 N. C., 63; *Reiger v. Davis,* 67 N. C., 185; *State v. Davis,* 15 N. C., 612; *Sprinkle v. Martin,* 71 N. C., 411. The case of *Powell v. Railroad,* 68 N. C., 395, seems to be very much in point, and the following language of *Justice Rodman* is applicable to this case: "We think that the general tone of the instructions is warmer and more animated than is quite consistent with the moderation and reserve of expression proper in stating the evidence to the jury in a plain and correct manner, and declaring and explaining the law arising thereon. There are passages which a jury might fairly understand (though not intended) as expressing an opinion on the facts."

We may well close this part of the case with the apt and expressive language of *Judge Manly* when speaking of a sim-

ilar charge: "This (referring to the statute), we suppose, has been adopted to maintain undisturbed and inviolate that popular arbiter of rights, the trial by jury, which was, without some such provision, constantly in danger from the will of the Judge acting upon men mostly passive in their natures, and disposed to shift off responsibility; and in danger also from the ever active principle that power is always stealing from the many to the few. We impute no intentional wrong to the Judge who tried this case below. The error is one of those casualties which may happen to the most circumspect in the progress of a trial on the circuit. When once committed, however, it was irrevocable, and the prisoner was entitled to have his case tried by another jury." *State v. Dick, supra.* And we may appropriately add the words of *Chief Justice Taylor,* uttered under like circumstances: "Upon considering the whole of the charge, it appears to us that its general tendency is to preclude that full and free inquiry into the truth of the facts which is contemplated by the law, with the purest intentions, however, on the part of the worthy Judge, who, receiving a strong impression from the testimony adduced, was willing that what he believed to be the very justice of the case should be administered. We are not unaware of the difficulty of concealing all indications of the conviction wrought on the mind by evidence throughout a long and complicated cause; but the law has spoken and we have only to obey." *Reel v. Reel, supra.* What those eminent jurists have so well said about the duty of the trial Judge, under our statute, and the consequences of a violation of it, will, if it is properly heeded, conduce to a more perfect and satisfactory trial of causes. The Judge should be the embodiment of even and exact justice. He should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister

of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the "cold neutrality of the impartial Judge" and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged.

The plaintiff also assigned as error the Judge's comments and criticisms upon the address of one of his attorneys to the jury, which he alleges were improper and prejudicial. It is not necessary to consider this and the other exceptions, as they may not be presented at the next trial. The error of the Court requires that another trial should be awarded.

New Trial.