STATE OF NORTH CAROLINA v. MILFORD PERRY

No. 7

(Filed 14 October 1970)

1. Jury § 5; Constitutional Law § 29— right to examine and challenge prospective jurors

Each defendant is entitled to full opportunity to face the prospective jurors, make diligent inquiry into their fitness to serve, and to exercise his right to challenge those who are objectionable to him.

2. Jury § 5—capital offenses — method of jury selection — 12 veniremen placed in jury box for examination

In this prosecution for the capital crimes of first degree burglary and rape, defendant was not prejudiced by the method of jury selection whereby 12 veniremen were placed in the jury box and examined by the State, the State made its challenges for cause and peremptory challenges prior to defendant's examination of any of the veniremen, the defendant then examined the 12 veniremen passed by the State and made challenges for cause and peremptory challenges, and the State was then permitted to examine and challenge replacements for veniremen excused because of challenge by defendant before defendant was permitted to examine and challenge such veniremen, it not being required in any criminal case, capital or otherwise, that each prospective juror be separately sworn and separately examined, and defendant having had full opportunity to confront, examine and challenge or pass each individual juror.

APPEAL by defendant from *Copeland, S.J.,* February, 1970 Session, PASQUOTANK Superior Court.

In these criminal prosecutions, the defendant, Milford Perry, was indicted, arraigned, tried and convicted of two capital felony charges. The cases were consolidated and tried together. The indictment in No. 1422A charged that on the night of September 24, 1969, the defendant, in the nighttime, feloniously and burglariously entered the dwelling house occupied by Emily J. White; that his breaking and entering was for the purpose of committing the felony of rape. In No. 1422B, the bill charged the defendant with the rape of Emily J. White.

The officers, on September 25, the day following the commission of the offenses, arrested the defendant on a warrant charging the two capital felonies. Upon a showing of indigency, the court appointed Frank B. Aycock, Jr. attorney for the accused. The defendant waived preliminary hearing and was ordered held without bail for the action of the Grand Jury.

State v. Perry

After arraignment and pleas of not guilty, the court ordered a special venire consisting of 100 jurors drawn from the regular jury box. Upon the return of the writ of venire, the court entered the following order:

"BY THE COURT: Let the record show that the jurors will be chosen in the manner as I show you here (addressing the Court Reporter), and make this a part of the record.

\*        \*        \*

'The Clerk shall call from the panel twelve to have seats in the jury box. The State shall then conduct its *voir dire* examination of those twelve and shall make any and all challenges for cause against any of the 12, and then it may make its peremptory challenges. If the Court shall allow a challenge for cause, or if the State shall excuse a juror peremptorily, the Clerk shall call a replacement into the box before the Solicitor completes his examination or challenge of any other of the 12. When the State is satisfied with the 12 in the box, the Clerk shall then tender the 12 in the box to the defendant. The defendant shall then conduct his *voir dire* examination of those 12. The defendant shall then make any challenge for cause against any of the 12, and shall then make any peremptory challenges against any of the 12. If by reason of cause or peremptorily a juror shall leave the box during the course of the defense counsel's examination of the jurors, the Clerk shall not immediately recall a replacement to the box but shall wait until the defendant shall state to the Court that he is satisfied with those of the 12 which remain after they have once been tendered him by the State. If there have been no members of the 12 removed, the Clerk shall proceed to empanel the jury. If anyone for cause or peremptorily shall have been removed by the defendant, then after remaining ones have been stated by the defendant to be satisfactory with him, he shall have replacements called for the vacant seats by the Clerk from the panel at large. Then the State must by virtue of G.S. 9-21(b) be allowed first to examine any and all replacement jurors in the box and make challenges both for cause and peremptorily before the defendant shall be allowed to question any replacement. At all times, the State is the party to be first satisfied with any given juror before he shall be ever tendered to the defendant. Those jurors which shall have been tendered to a defendant by the State

and not challenged for cause or peremptorily by the defendant, may not thereafter be challenged by the defendant. The defendant may not stand any at the foot of the list or make any reservation of any challenge to await and see whom the replacement shall be. Once the defendant has passed, he has passed for all purposes.'

OBJECTION by the defendant.

OBJECTION OVERRULED.

EXCEPTION by the defendant. This was defendant's Exception #4."

After the order of consolidation was entered in the trial court, the jury was selected in accordance with the court's directive. The defendant excepted and upon the exception based his Assignment of Error No. 3.

The State's evidence made out a case for the jury on both charges. The victim positively identified the defendant as the person who broke into her dwelling house in the nighttime and forcibly and against her will committed upon her the crime of rape. During her resistance, she clawed and scratched the defendant about the face and body. This she reported to the officers whom she called immediately and gave a description of her assailant. The next day the defendant was arrested. He was fully identified by the victim and upon arrest was found with fresh scratches on his face and body. The examining officers found his identifying palm print on the door which had been forced open and by which the assailant entered the victim's bedroom.

At the close of the State's evidence, the defendant called his wife and another who lived in an adjoining apartment whose evidence tended to indicate the defendant might have returned to the defendants apartment at a time prior to that fixed by the victim during which the offenses charged were committed. The defendant himself did not testify.

After hearing all the evidence, the argument of counsel and charge of the court, the jury returned in each case a verdict of guilty with a recommendation that the defendant's punishment be imprisonment for life in the State's prison. From the judgments of life imprisonment, the defendant appealed. After first giving notice of appeal, the defendant undertook to with-

draw the plea. Thereafter, he filed with this Court a petition that his appeal be heard. The petition was allowed.

*Attorney General Robert Morgan, Assistant Attorney General Millard R. Rich, Jr., for the State.*

*Frank B. Aycock, Jr. for the defendant.*

HIGGINS, Justice:

The defendant's able trial counsel requests this Court to review the record of the trial and to give the defendant the benefit of any error disclosed in the record. However, by brief and by oral argument, the defendant relies for a new trial on his Assignment of Error No. 3, which presents this question: "Did the trial judge commit prejudicial error in denying the defendant the right to the selection of the trial jury according to North Carolina custom and practice?"

[1, 2] Counsel for the defendant argued here the defendant was prejudiced in the jury selection by the failure of the court to require that each prospective juror be separately sworn and separately examined, touching his fitness to serve on the trial panel. He cites as authority this Court's opinion in *State v. Roseboro*, 276 N.C. 185, 171 S.E. 2d 886. Admittedly the practice usually, but not always, followed in selecting the trial jury in a capital case is correctly stated in *Roseboro*. The practice was alluded to in that case for the purpose of disclosing the wide range of inquiry allowed the parties before requiring them to pass on the acceptability of each juror. In *Roseboro* the jury selection covered 416 pages of the trial record. This Court's discussion was not intended as fixing any rule for jury selection and it must be noted that in general practice the method followed in *Roseboro* is frequently criticized as being unduly wasteful of the court's time and fails to accomplish any useful purpose. Each defendant is entitled to full opportunity to face the prospective jurors, make diligent inquiry into their fitness to serve, and to exercise his right to challenge those who are objectionable to him. The actual conduct of the trial must be left largely to the sound discretion of the trial judge so long as the defendant's rights are scrupulously afforded him.

[2] Under the trial court order, the method of selection offered the defendant full opportunity to exercise all his constitutional

rights. The panel selected did not contain any juror to which he had objection. He fails to allege that he had exhausted his peremptory challenges.

We do not know of any rule or authority which requires the North Carolina trial court in any criminal case, capital or otherwise, to follow the *voir dire* procedure in jury selection which the Court has described in *Roseboro*. The federal rule with respect to jury selection in criminal cases provides:

"(a) Examination. The court may permit the defendant or his attorney and the attorney for the government to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the defendant or his attorney and the attorney for the government to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions by the parties or their attorneys as it deems proper." Citing *Pointer v. United States,* 151 U.S. 396, 14 S. Ct. 410, 38 L. Ed. 208 (1894) ; *Hanson v. United States,* 271, F. 2d 791 (9th Cir., 1959).

The following is quoted from Matthews 1 "How to Try A Federal Criminal Case," Section 399, page 550:

"The fundamental rules governing the selection of trial jurors appear in the following oft-quoted language of Mr. Justice Harlan, in *Connors v. United States* (158 U.S. 408, 39 L. ed. 1033, 15 S. Ct. 951) : 'It is quite true, as suggested by the accused, that he was entitled to be tried by an impartial jury, that is, by jurors who had no bias or prejudice that would prevent them from returning a verdict according to the law and evidence. It is equally true that a suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried. That inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion . . . . "

Apparently, the purpose of Judge Copeland's order was to reduce the time consuming procedure so apparent in *Roseboro*. Assignment of Error No. 3 is not sustained. *State v. Peele,* 274

N.C. 106, 161 S.E. 2d 568; *Pointer v. United States, supra; State v. Munch,* 57 Mo. App. 207.

In the trial, verdicts and judgment, we find

No error.