STATE OF NORTH CAROLINA v. DEE D. ATKINSON

No. 2

(Filed 10 March 1971)

1. Jury § 7; Criminal Law § 135— rape case — exclusion of jurors who would never return death penalty

The trial court in a rape case properly sustained the State's challenge for cause to those jurors who stated that they were irrevocably committed before the trial to vote against the death penalty regardless of the facts and circumstances which might be revealed by the evidence.

2. Jury § 5— selection of jurors — selection of 12 jurors by the State

It was proper in a rape case for the State to pass upon a panel of twelve prospective jurors before any jurors were tendered to the defense.

State v. Atkinson

3. Criminal Law § 76— admissibility of confession — sufficiency of findings on voir dire

Trial court properly admitted defendant's confession in evidence where all the testimony on the *voir dire* was to the effect that the defendant, while subject to custodial interrogation, was fully warned of his rights and that the defendant appeared to be coherent and to understand the proceedings.

4. Criminal Law § 76— admission of confession — corroborative testimony — voir dire hearing

The admission of a police officer's testimony which corroborated previous testimony relating to defendant's confession does not require a second *voir dire* hearing on the voluntariness of defendant's confession.

5. Criminal Law §§ 42, 43; Rape § 4— rape prosecution — admission of exhibits — clothing — photographs — maps

In a prosecution charging defendant with the rape of his four-year-old stepdaughter, who died as a result of the offense, the trial court properly admitted in evidence the following exhibits of the State: the clothes worn by the stepdaughter at the time of the offense, the washcloth used by the defendant to wipe blood from the child, color photographs taken of the child in the morgue, and the map drawn by defendant to guide the officers to the place where the body was buried.

6. Criminal Law § 53; Rape § 4— rape prosecution — testimony by pathologist

In a prosecution charging defendant with the rape of his four-year-old stepdaughter, testimony by the examining pathologist that the victim had been penetrated and that her injuries could have been caused by a male organ, *held* admissible, and such testimony did not constitute an invasion of the province of the jury.

7. Criminal Law § 34— rape prosecution — allusion to the murder of the rape victim

In a prosecution charging defendant with the rape of his four-year-old stepdaughter, who died as a result of the offense, allusions to the child's murder by the trial witnesses and by the solicitor in his argument to the jury were not erroneous, the murder having been so closely connected with the rape in both time and circumstance as to constitute the same transaction.

8. Criminal Law §§ 114, 120— rape case — instructions on punishment — expression of opinion

In a prosecution charging defendant with the rape of his four-year-old stepdaughter, trial court's instruction that "if the jury do not recommend that defendant's punishment shall be imprisonment for life it will be the duty of this court, and you may rest assured that the court will comply with its duty and sentence him to die," *held* not prejudicial to defendant. G.S. 1-180.

**9. Constitutional Law § 36; Rape § 7— rape prosecution — death penalty — cruel and unusual punishment**

> Imposition of the death penalty upon defendant's conviction of the rape of his four-year-old stepdaughter is not cruel and unusual punishment. U. S. Constitution, VIII Amendment; N. C. Constitution, Art. I, § 14; G.S. 14-21.

Justice SHARP dissenting.

Chief Justice BOBBITT joins in dissenting opinion.

APPEAL by defendant from *Bailey, J.,* at the August 1970 Criminal Session of JOHNSTON Superior Court.

The bill of indictment, proper in form, charges defendant with the forcible rape of Catherine Carr in Johnston County on 16 December 1967, a violation of G.S. 14-21.

The State's evidence—defendant offered none—tends to show that Catherine (Kathy) Carr, age four years, was living in Smithfield, Johnston County, with her maternal grandmother on 16 December 1967. The defendant was her stepfather. He lived in Smithfield and the child's mother, who at the time was living separate and apart from defendant, lived in Durham. Prior to the separation they had all lived together at defendant's home.

At approximately 5 p.m. on 16 December 1967 defendant drove his station wagon to the home of the grandmother and told her he wanted to take Kathy to see her mother in Durham. They located Kathy at the home of a relative, picked her up and returned to the grandmother's home where a change of clothing was assembled for the child. Defendant and Kathy then left together. The grandmother, an experienced hospital nurse's aide, observed nothing unusual about defendant. He appeared to her to be perfectly normal.

About 9:45 p.m. defendant, driving his station wagon, pulled up in front of the Charcoal Inn Restaurant in Smithfield. There was no one else in the station wagon. He got out and entered the restaurant. His clothing was disarranged. He went to the restroom and remained there about five minutes. When he emerged his hair had been combed, his shirttail was tucked in and his clothing properly arranged. He purchased a Coca-Cola, drank some of it, went out to his station wagon, opened the door but never got in. He immediately shut the door, returned to the

State v. Atkinson

restaurant, and announced that someone had kidnapped his child. He made conflicting statements as to where the child had been in the vehicle. In the opinion of a police officer who was seated in the restaurant in civilian clothes, and who had observed the station wagon through the window from the time it arrived until defendant announced that someone had stolen the child, he acted normal at the time.

Investigating officers warned defendant "that he had an absolute right to remain silent, that he did not have to answer any questions, or make any statements to me whatsoever; that anything that he did say could be used against him in a court of law; that he was entitled to a lawyer at any time he so desired; that if he could not afford a lawyer and wanted a lawyer, that one would be appointed for him by the State of North Carolina. I also told him that if he elected to answer questions that he could terminate the interview at any time he so desired and that a lawyer would be appointed for him if he wanted one. I also asked him if he understood each of these rights. He stated that he did. I asked him if he wanted a lawyer and he stated that he did not want one." Defendant first told the officers that after he left the home of the maternal grandmother with Kathy he drove to his home to call his parole officer for permission to leave the county in order to go to Durham; that he was unsuccessful in contacting his parole officer; that after the second unsuccessful call he and Kathy rode around looking at Christmas lights in Smithfield and Selma until about 10 o'clock, when he stopped at the Charcoal Inn Restaurant to visit the restroom; that Kathy was standing on the seat beside him and when he stopped she lay down on the seat and he covered her with his field jacket; that when he returned from the restroom Kathy was gone; that he so informed the people inside the restaurant and requested that the police department be called; that the officers came, searched the area, but were unable to locate her. This statement was made on 17 December 1967 at about 12:30 p.m. He repeated the same story to the officers the following day at 12:30 p.m.

Defendant was taken to SBI Headquarters in Raleigh, again warned of his constitutional rights, and interviewed by SBI Agent Robert D. Emerson. This interview took place on 18 December 1967 from 6:05 to 6:46 p.m. He told Mr. Emerson that after he picked up his stepdaughter Kathy Carr he left the grandmother's home and drove to his residence; that he attempted un-

successfully to telephone his parole officer and then decided to have intercourse with Kathy; that he did so and that she screamed and struggled; that the child was torn and he used a sheet and a washcloth to wipe the blood from the child; that he dressed her, took her to his station wagon and left with her. Defendant then drew a map, without assistance, using paper and pen supplied by the officer. The map was accurate, and, accompanied by defendant, the officers found Kathy's body buried in a pine woods in Wayne County, eighteen miles from defendant's home.

A postmortem examination by Dr. Dewey Harris Page, pathologist, revealed that Kathy had been penetrated and had suffered a tear in the posterior vaginal wall.

The jury found defendant guilty of rape and the presiding judge pronounced a sentence of death as required by law. Defendant appealed to the Supreme Court assigning errors discussed in the opinion.

*Robert A. Spence, Attorney for defendant appellant.*

*Robert Morgan, Attorney General; Andrew A. Vanore, Jr., Assistant Attorney General, and Charles A. Lloyd, Staff Attorney, for the State of North Carolina.*

HUSKINS, Justice.

[1]    Appellant first contends that the trial court erred in allowing the State to successfully challenge for cause certain prospective jurors because of their stated views on capital punishment.

The law with regard to this issue is well established. "[A] sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." *Witherspoon v. Illinois,* 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968). *See State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593 (1968). On the other hand, as the United States Supreme Court said in *Witherspoon,* footnote 21: "The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and

circumstances that might emerge in the course of the proceedings. If the *voir dire* testimony in a given case indicates that veniremen were excluded on any broader basis than this, the death sentence cannot be carried out. . . ." *Accord, Boulden v. Holman,* 394 U.S. 478, 22 L. Ed. 2d 433, 89 S.Ct. 1138 (1969).

On the record before us seven jurors were excused for cause because of their objections to the death penalty, and one challenge by the State based on such objection was disallowed. In each instance where the challenge was sustained the prospective juror testified on *voir dire* in substance that there were no circumstances under which he or she could conscientiously return a verdict which would result in a death penalty. A fair appraisal of the statements of each venireman successfully challenged points unerringly to the conclusion that he or she was irrevocably committed before the trial began to vote against the death penalty regardless of the facts and circumstances which might be revealed by the evidence. Such irrevocable commitment is valid cause for challenge in accord with both the letter and the spirit of *Witherspoon*. This assignment of error is accordingly overruled.

[2] Appellant next contends that the trial court erred in departing from the customary procedure for the selection of jurors in a capital case by requiring that a panel of twelve be passed on by the State before any jurors were tendered to the defense. Such procedure was recently considered and approved by this Court in *State v. Perry,* 277 N.C. 174, 176 S.E. 2d 729 (1970). There, Justice Higgins, for the Court, wrote: "Each defendant is entitled to full opportunity to face the prospective jurors, make diligent inquiry into their fitness to serve, and to exercise his right to challenge those who are objectionable to him. The actual conduct of the trial must be left largely to the sound discretion of the trial judge so long as the defendant's rights are scrupulously afforded him." The procedure followed here meets this standard. See Braswell, *Voir Dire*—Use and Abuse, 7 Wake Forest Law Review 49 (1970) for an informative discussion on *voir dire* examination of jurors and witnesses. This assignment of error is without merit.

[3] For his third assignment defendant contends that the trial court erred in admitting into evidence his purported confession as related by Officer Emerson and corroborated by Officer Crocker.

When the testimony of Emerson was challenged at the trial a *voir dire* examination was conducted in the absence of the jury following which the trial judge found that defendant had been warned of his constitutional rights as outlined in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), and was thoroughly aware of them at all times when interrogation took place. The judge concluded that defendant freely, voluntarily and understandingly waived his right to remain silent and his right to have counsel present during interrogation. Officer Emerson's testimony of the confession was accordingly admitted and thereafter the testimony of Officer Crocker, who was not examined on the *voir dire,* was admitted over objection without a further *voir dire.*

All the evidence on the *voir dire* is to the effect that the defendant, while subject to custodial interrogation, was fully warned of his rights each time he was questioned. He appeared to be coherent and to understand the proceedings. Indeed, there is no suggestion in the record of any coercion whatsoever. Defendant did not take the stand during the *voir dire* and offered no evidence from any source to rebut the testimony of the officers that the confession was completely voluntary and was knowingly and understandingly made. The record shows, therefore, that the State carried its burden of proof and demonstrated with undisputed evidence that defendant's confession was freely and voluntarily obtained. *See State v. Thorpe,* 274 N.C. 457, 164 S.E. 2d 171 (1968). The findings of the judge are supported by all the evidence adduced on the *voir dire,* and those findings will not be disturbed. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966).

[4]   The testimony of Officer Crocker, who was present while defendant was questioned by Emerson, is corroborative of Emerson's testimony and therefore admissible. Stansbury, N. C. Evidence (2d Ed., 1963), § 50. No second *voir dire* on the voluntariness of defendant's confession was required for admission of Crocker's testimony.

[5]   Defendant contends various exhibits of the State, admitted over objection, were inflammatory and prejudicial. Included among the exhibits were clothes worn by the victim, the bloody washcloth, photographs of the victim in the morgue, and the map drawn by defendant to guide the officers to the place where

the body was buried. Authentication of the items admitted into evidence is not questioned.

Garments worn by the victim of a rape and murder showing the location of a wound upon the person of the deceased, or which otherwise corroborate the State's theory of the case, are competent. *State v. Speller,* 230 N.C. 345, 53 S.E. 2d 294 (1949) ; *State v. Fleming,* 202 N.C. 512, 163 S.E. 453 (1932). When relevant, articles of clothing identified as worn by the victim at the time the crime was committed are always competent evidence, and their admission has been approved in many decisions of this Court. *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969) ; *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568 (1968). *See* Stansbury, N. C. Evidence (2d Ed., 1963), § 118.

Photographs are admissible in this State to illustrate the testimony of a witness. *State v. Gardner,* 228 N.C. 567, 46 S.E. 2d 824 (1948) ; *State v. Hatcher,* 277 N.C. 380, 177 S.E. 2d 892 (1970). *See generally,* Stansbury, *supra,* § 34. Here, the jury was properly instructed to consider the photographs in question for illustrative purposes only. Their admission was not error. *State v. Norris,* 242 N.C. 47, 86 S.E. 2d 916 (1955) ; *State v. Perry,* 212 N.C. 533, 193 S.E. 727 (1937).

That a photograph might inflame the passions of the jurors does not render it inadmissible. "The fact that a photograph depicts a horrible, gruesome and revolting scene, indicating a vicious, calculated act of cruelty, malice or lust, does not render the photograph incompetent in evidence, when properly authenticated as a correct portrayal of conditions observed by and related by the witness who uses the photograph to illustrate his testimony." *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969). *Accord, State v. Porth,* 269 N.C. 329, 153 S.E. 2d 10 (1967). Furthermore, the fact that photographs are in color does not affect their admissibility. *State v. Hill,* 272 N.C. 439, 158 S.E. 2d 329 (1968). Thus the color photographs depicting the condition of the child's body when examined by Dr. Pate were competent for the purpose of illustrating the doctor's testimony.

The officers testified that defendant drew the map to which defendant objects and that they followed it to the scene where defendant had buried the victim's body. Obviously, the map was admissible to illustrate their testimony. Stansbury, *supra,* § 34.

The washcloth was properly admitted in evidence over defendant's objection. Decisions of this Court establish the rule that objects which have a relevant connection with the case are admissible in evidence in both civil and criminal trials. *State v. Mordecai,* 68 N.C. 207 (1873) ; *State v. Wall,* 205 N.C. 659, 172 S.E. 216 (1934) ; *State v. Harris,* 222 N.C. 157, 22 S.E. 2d 229 (1942) ; Stansbury, *supra,* § 118.

[6] Appellant's fifth assignment of error concerns the testimony of the Pathologist, Dr. Pate, who examined the victim at the morgue and testified at the trial with respect to the condition of Kathy Carr's body. Appellant contends the doctor was allowed to testify regarding the very question the jury was required to answer, *i.e.,* whether the victim had been raped, citing *State v. Hightower,* 187 N.C. 300, 121 S.E. 616 (1924). There is no factual basis for this contention. The record shows that the pathologist testified only that the victim had been penetrated and that the injuries could have been caused by a male organ. He did not testify that the defendant or anyone else raped Kathy Carr, a subject on which he obviously had no information. His testimony was properly admitted. *State v. Mays,* 225 N.C. 486, 35 S.E. 2d 494 (1945) ; *State v. Perry,* 250 N.C. 119, 108 S.E. 2d 447 (1959) ; Stansbury, *supra,* § 135; *State v. Atkinson, supra.*

[7] In several instances during the trial witnesses alluded to the fact that the victim was dead. The solicitor argued as much to the jury. Here, with defendant on trial for rape and not for murder, the contention is made that any allusion, in either the evidence or the argument, to the fact that Kathy Carr was murdered is reversible error.

The general rule in this State is that all evidence of the commission of other offenses must be excluded in the prosecution for a particular crime. *State v. Vinson,* 63 N.C. 335 (1869) ; *State v. Beam,* 179 N.C. 768, 103 S.E. 370 (1920) ; *State v. McClain,* 240 N.C. 171, 81 S.E. 2d 364 (1954) ; Stansbury, *supra,* § 91. To this general rule, however, there are several exceptions, and they are fully set out by Justice Ervin in *State v. McClain, supra.* The exception pertinent here provides that evidence of another offense is competent and admissible "when the two crimes are parts of the same transaction, and by reason thereof are so connected in point of time or circumstance that one cannot be fully shown without proving the other." *State v. McClain,*

*supra.* Such is the case here. While the State introduced no direct evidence of the murder, mention of it inevitably occurred during the trial. It is obvious from the record that the jury was well aware that the victim of the rape was also killed in the same transaction. Even so, this was not error. It was unavoidable because the crimes were so closely interrelated. But for the fact that the rape and the murder occurred in different counties defendant would likely have been tried for both crimes at the same time before a single jury. This assignment of error is overruled.

[8] After having outlined the factual findings upon which it would be the duty of the jury to return a verdict of guilty as charged in the bill of indictment, and after having informed the jury of its unbridled discretionary right to recommend life imprisonment if it found defendant guilty, the judge used the following language in his charge: "If you find him guilty of rape as charged in the bill of indictment and say no more; that is to say, if you do not recommend that his punishment shall be imprisonment for life it will become the duty of this court, and you may rest assured that the court will comply with its duty and sentence him to die." Defendant excepts to the quoted portion of the charge and assigns it as error, contending that it amounts to an expression of opinion on the evidence in violation of G.S. 1-180.

It is the duty of the trial judge at all times to be absolutely impartial. *Nowell v. Neal,* 249 N.C. 516, 107 S.E. 2d 107 (1959). G.S. 1-180 forbids the judge to intimate his opinion in any form whatever, and it is the intent of the law to insure every litigant a fair and impartial trial before the jury. *State v. Owenby,* 226 N.C. 521, 39 S.E. 2d 378 (1946). Any opinion or intimation of the judge at any time during the trial which prejudices a litigant in the eyes of the jury is reversible error. *State v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412 (1966). The judge must abstain from conduct or language which tends to prejudice the accused or his cause with the jury. *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9 (1951).

Applying these principles to the quoted portion of the charge, we hold that the language assigned for error is insufficient to constitute an expression of opinion. Rather, the language pointedly brings to the attention of the jury that, absent its recommendation of life imprisonment, the court will pronounce a sentence of death, a duty required of him by law. The

jury was thus apprised of the importance of its task and of the punishment to result from its verdict. In our view the language used was more apt to invite a recommendation of life imprisonment than to even remotely suggest its omission. When the charge is considered as a whole, as we are required to do, it is free of prejudicial error.

[9] Finally, appellant contends that the sentence of death in this case is cruel and unusual punishment prohibited by the Eighth Amendment to the Constitution of the United States.

Article I, Section 14, of the Constitution of North Carolina and the Eighth Amendment to the Federal Constitution, now applicable to the states, *Robinson v. California,* 370 U.S. 660, 8 L. Ed. 2d 758, 82 S. Ct. 1417 (1962), prohibit cruel and unusual punishments. When the punishment imposed, however, does not exceed the limits fixed by statute it cannot be classified as cruel and unusual in a constitutional sense, unless the punishment provisions of the statute itself are unconstitutional. *State v. Davis,* 267 N.C. 126, 147 S.E. 2d 570 (1966) ; *State v. Bruce,* 268 N.C. 174, 150 S.E. 2d 216 (1966) ; *State v. Greer,* 270 N.C. 143, 153 S.E. 2d 849 (1967) ; *State v. Robinson,* 271 N.C. 448, 156 S.E. 2d 854 (1967).

G.S. 14-21 provides that the punishment for rape is death unless the jury at the time of rendering its verdict recommends life imprisonment. Here, no recommendation was made and defendant was sentenced to death. The death penalty is not prohibited as cruel and unusual in the constitutional sense, and its imposition upon conviction of the crime of rape is not unconstitutional *per se. State v. Yoes* and *Hale v. State,* 271 N.C. 616, 157 S.E. 2d 386 (1967) ; *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969). See *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404 (1971), decided this date, in which Justice Moore discusses the pertinent authorities and reaffirms this Court's judicial determination that the death penalty is not constitutionally prohibited.

Appellant relies on *Ralph v. Warden,* 438 F. 2d 786 (4th Cir., 1970), a recent Maryland case in which the Fourth Circuit Court of Appeals held that imposition of the death penalty for rape where the victim's life is neither taken nor endangered violates the Eighth Amendment prohibition against cruel and unusual punishments. It suffices to say that the facts in that case are distinguishable, the logic employed is not persuasive, and the decision is not binding on this Court. *State v. Barnes,*

264 N.C. 517, 142 S.E. 2d 344 (1965) ; 20 Am. Jur. 2d, Courts, § 230; Annot., 147 A.L.R. 857 (1943).

Our law prescribes the penalty of death for the crime of rape unless the jury recommends otherwise. The enormity of the act committed upon a four-year-old child, attended by her screams and struggles, understandably accounts for the absence of a recommendation by the jury. While the wisdom of capital punishment in such cases is not for courts to consider, we have heretofore judicially determined and upheld its constitutional validity in numerous cases. *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969) ; *State v. Spence,* 274 N.C. 536, 164 S.E. 2d 593 (1968) ; *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568 (1968). A careful review of the record reveals no errors of law.

No error.

Justice SHARP dissenting.

Had defendant been convicted in a trial free from prejudicial error my vote would be to vacate the sentence of death and to remand the case to the Superior Court for the imposition of a life sentence for the reasons stated in the dissenting opinion of Chief Justice Bobbitt in *State v. Atkinson,* 275 N.C. 288, 323-328, 167 S.E. 2d 241, 262-265. *See also* the dissenting opinions in *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885; *State v. Ruth,* 276 N.C. 36, 170 S.E. 2d 897; *State v. Roseboro,* 276 N.C. 185, 171 S.E. 2d 886; *State v. Sanders,* 276 N.C. 598, 174 S.E. 2d 487. However, it is my conviction that the judge committed prejudicial error entitling defendant to a new trial when he charged the jury as follows:

"If you find him guilty of rape as charged in the bill of indictment and say no more; that is to say, if you do not recommend that his punishment shall be imprisonment for life, it will become the duty of this court, AND YOU MAY REST ASSURED THAT THE COURT WILL COMPLY WITH ITS DUTY AND SENTENCE HIM TO DIE."

I find astonishing the statement in the majority opinion that the foregoing language "was more apt to invite a recommendation of life imprisonment than to even remotely suggest its omission." It is inconceivable to me that the jury could have interpreted the gratuitous statement by the able and forceful

State v. Atkinson

trial judge to mean anything except that he believed defendant had committed a crime so dastardly that death was the only commensurate punishment.

Jurors know that a judge is bound by the law. They assume he will apply it to the best of his knowledge and expect no guaranty from him that he will do so. Judge Bailey's specific assertion, that if the jury's verdict so required they could "rest assured" the court would comply with its duty and sentence defendant to die, suggests that the jurors should likewise perform their duty with respect to the death penalty.

Our law, G.S. 1-180, forbids a judge, at any time during a trial, to intimate an opinion as to the guilt or innocence of a defendant whether the crime for which he is being tried be a misdemeanor or a capital felony. This Court has always been quick to award a new trial in any case in which the judge has transgressed this statute, no matter how inadvertently he may have done so. *State v. Hopson,* 265 N.C. 341, 144 S.E. 2d 32; *State v. Tessnear,* 265 N.C. 319, 144 S.E. 2d 43; *State v. Pugh,* 250 N.C. 278, 108 S.E. 2d 649; *State v. Oakes,* 249 N.C. 282, 106 S.E. 2d 206. "The books disclose the fact that able and upright judges have sometimes overstepped the limit fixed by the law; but as often as it has been done this Court has enforced the injunction of the statute and restored the injured party to the fair and equal opportunity before the jury which had been lost by reason of the transgression, however innocent it may have been; and we must do as our predecessors have done in like cases." *Withers v. Lane,* 144 N.C. 184, 190, 56 S.E. 855, 857.

When, as here, an accused has been convicted of a crime for which the punishment is either life or death, the decision is in the "unbridled discretion" of the jury. *State v. McMillan,* 233 N.C. 630, 65 S.E. 2d 212. In such a case the defendant is entitled to "the cold neutrality of the impartial judge" not only upon the issue of his guilt but also upon the question of his punishment. The jury's discretion may not be influenced by any intimation from the judge.

In this case the solicitor inquired of each of the forty prospective jurors whether he had such moral or religious scruples against the death penalty that he could not return a verdict which would require the imposition of the death penalty even though he was convinced beyond a reasonable doubt that the defendant

was guilty as charged. Each juror who gave an affirmative answer to this question was successfully challenged by the State. The State's evidence tended to show that defendant was guilty of raping his four-year-old stepdaughter. It revealed a horrible and incomprehensible crime. Defendant offered no evidence. As a practical matter the only question for the jury was whether defendant should suffer death or life imprisonment for his crime. In such a situation it was incumbent upon the judge "at all times to be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as minister of justice, he is supposed, figuratively speaking, to hold in his hand." *Withers v. Lane, supra* at 192, 56 S.E. at 857.

Judge Bailey's reaction to the crime for which defendant now stands convicted is understandable. Notwithstanding, the law has strictly enjoined the judge from imparting to the jury any knowledge of his own opinion of the case. In speaking to trial judges in 1822, almost one hundred and fifty years ago, Chief Justice Taylor said, "I am not unaware of the difficulty of concealing all indications of the conviction wrought on the mind by evidence throughout a long and complicated cause; but the law has spoken and we have only to obey." *Reel v. Reel,* 9 N.C. 63, 92.

For the reasons stated I vote for a new trial.

Chief Justice BOBBITT joins in this dissenting opinion.